Silvia Simonet, demandante y apelada, *v.* Otilio Sandoval, demandado y apelante.

Núm. 8522.—*Sometido:* Junio 25, 1942. *Resuelto:* Julio 8, 1942.

*E. Pérez Casalduc,* abogado del apelante; *Antonio Lens Cuena,* abogado de la apelada.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Otilio Sandoval ha apelado de la sentencia de la corte de distrito concediendo el divorcio a su esposa por la causal de abandono. La esposa no radicó alegato y el fiscal de esta corte ha recomendado que revoquemos la sentencia.

La demandante declaró que contrajo matrimonio con el demandado en Nueva York en 1934, donde residía con su familia. Algunas semanas después la pareja vino a Puerto Rico, estableciéndose el domicilio conyugal en Manatí en una casa propiedad de su esposo. Sus padres y su hermana vinieron a Puerto Rico y vivieron con ellos. En 1935 nació

una hija del matrimonio. En abril 1937 ella vino a Santurce, con permiso de su esposo, a dar a luz su segundo hijo. Su familia vino con ella. Desde entonces no ha regresado a Manatí, y ella y sus dos hijos han vivido con y han sido mantenidos por su hermano. Su esposo la visitó en Santurce durante los tres o cuatro meses siguientes al nacimiento del segundo niño, pero se oponía a que regresara a Manatí hasta que él terminara ciertos negocios. En su última visita, cuando ella insistió de nuevo en regresar a Manatí, él rehusó permitirlo, diciéndole que había alquilado su casa en Manatí y almacenado los muebles en un almacén. Ella le dijo que deseaba regresar a su hogar, pero que lo que él quería no podía ser, porque "él no quería tener hijos y me hizo proposiciones ilícitas". Su esposo se molestó y se fué diciéndole que nunca más lo volvería a ver.

En el contrainterrogatorio la demandante al principio negó haber tomado dinero alguno perteneciente a su esposo después de haber venido a Santurce. Finalmente admitió que había hecho efectivos cheques ascendentes en total a $10,000, pero manifestó que había entregado este dinero a su esposo. Negó que hubiese tenido relaciones maritales con su esposo en las visitas de éste a Santurce. Admitió que había radicado una demanda de divorcio contra él en 1937, pero hizo constar que había abandonado dicho pleito como resultado de una reconciliación.

El único otro testigo de la demandante lo fué su hermana. Su declaración tendió principalmente a corroborar lo relatado por la demandante en cuanto a su última conversación con su esposo.

El demandado declaró que en 1937 había dado permiso a su esposa para venir a San Juan por tres días con el fin de ver un doctor; que ella y su familia salieron de Manatí en el automóvil de él; que le dió a ella $65 para los gastos de ese viaje; que ella le telefoneó que viniese a San Juan, diciéndole en aquel momento que ella tenía en mente permanecer en San Juan y había hecho efectivos cheques de él

ascendentes a $10,000, el producto de·los cuales nunca recibió de ella;. que mantuvo a su esposa e hijos, a pesar de· su separación, hasta el 1940, en que su esposa se negó a aceptar más dinero de él, diciéndole que estaba interesada en obtener el divorcio; que ·su esposa continuó insistiendo en que ·ella no viviría en Manatí y que él debía dejar su negocio, mudarse a San Juan y ponerle allí una casa; que cuando él le dijo que esto era imposible, ella dijo que preferiría divorciarse a vivir en Manatí; que había guardado los muebles en su casa en Manatí por espacio de año y medio, pero que finalmente había alquilado la casa y devuelto los muebles a su suegra, a petición de ésta.

El apelante insiste en que revoquemos la sentencia por el fundamento. de que existía una incongruencia subs-tancial entre la demanda y la prueba. La demandante alegó que el· domicilio conyugal radicaba en Santurce, en donde el demandado la había abandonado, mientras que su declaración fué que el domicilio conyugal radicaba en Manatí, el· cual ella abandonó voluntariamente. . Sin embargo, durante el juicio no hubo objeción a tal´declaración, y por tanto no revocaremos por este fundamento (*Viñas* v. *Hernández,* 60 D.P.R. 276).

No obstante, consideramos esta alegación de la de-manda como un hecho significativo de por sí en cuanto a la cuestión del abandono. Cuando la demandante juró su de-manda, aparentemente consideró que su hogar, con su familia en Santurce, era el domicilio conyugal. Pero, de su declara-ción durante el juicio, resulta que el verdadero domicilio con-yugal estaba en Manatí. Y aún aceptando sustancialmente que toda su declaración sea cierta, la esposa no ha establecido un caso de abandono. *Parés* v. *Echandi,* 55 D.P.R. 163; *Arce* v. *Lebis,* 50 D.P.R. 899.

La demandante vino a Santurce de `propia iniciativa. Trajo su familia con ella. ´Después de negarlo al principio, admitió que había hecho efectivos cheques de su esposo por $10,000. Aun asumiendo que su esposo insistiera en que ella

se quedara temporalmente en San Juan en lo que él terminaba ciertas negociaciones, cosa que él niega, en vista del hecho de que estas negociaciones exigían su presencia en el campo, su súplica estaba ampliamente justificada. La versión de la demandante acerca de la alegada conversación final entre ellos no es muy convincente. Declaró que su esposo le dijo que había alquilado su casa en Manatí y almacenado los muebles. Pero un testigo desinteresado declaró que había tomado en alquiler la casa al esposo bastante tiempo después y que cuando fué a vivir a la casa, los muebles estaban todavía en ella.

La vaga declaración de la demandante de que "él no quería tener hijos y me hizo proposiciones ilícitas" ciertamente no es suficiente de por sí para justificar una sentencia de divorcio por la causal de abandono. Véase *Axtmayer* v. *Ortiz,* 19 D.P.R. 499, 502. Pero *cf. Kreyling* v. *Kreyling,* 23 A. (2d) 800 (N. J. Ch. 1942); 55 Harvard Law Review 1044.

La verdadera situación fué destacada por las siguientes preguntas hechas a la demandante por el juez de distrito y de sus contestaciones:

"P. ¿Y si él le dijera ahora que quiere que volviera a Manatí y que estaba dispuesto a traerla, estaba dispuesta a volver a Manatí? —Es una pregunta muy difícil, porque comprenderá que hace tres años y medio que estamos separados y surje de nuevo otra vez y vuelve a traer otra vez esto en corte, porque van tres años y terminaríamos toda la vida.—P. ¿Quiere decir, que en esos tres años debido a la conducta de él ha perdido el cariño?—Si, señor;..... P. ¿No podría hacer un sacrificio por los hijos para evitar el divorcio?—No, señor.''

En contraste, del mismo tipo de interrogatorio hecho al demandado surgieron contestaciones al efecto de que todavía quería a su esposa, que deseaba que ella desistiera de su demanda de divorcio y regresara a Manatí como su esposa, especialmente por el bien de sus hijos, y que ella así lo haría si no fuera por la insistencia de sus padres de que se divorciara de él.

La "Opinión y Sentencia" del juez de distrito dice en parte como sigue:

"Del conjunto de la evidencia se llega por convicción a las siguientes conclusiones:

"El demandado se casó con una muchacha muy joven para él, existiendo una diferencia de edad de tal naturaleza, que no sólo por los años, sino por la apariencia física, ella podría ser y pasar por su hija propia.

"Se casaron en New York, ciudad donde la vida dinámica es causa de que no se medite mucho sobre las consecuencias de estos enlaces inadecuados.

"Hace como tres o cuatro años la demandante se trasladó a Santurce donde tuvo el último hijo. Se concluye que desde entonces ya había diferencias entre ambos esposos, pues hubo litigios entre ellos en la Corte de Distrito de San Juan por alimentos y divorcio. Ella declaró que después dejó las cosas así, esperando ver si la situación se arreglaba, pero nunca volvió a Manatí.

"Se deduce por el conjunto de la evidencia, que la relación marital quedó entonces en tal forma, que el demandado le daba dinero y la visitaba en Santurce y ella continuaba alargando el rompimiento total de algo inevitable, pues el cariño, si alguna vez existió, se había extinguido entre ellos, a juzgar por las actuaciones de ambos.

"Desde fines del año 1939 el demandado dejó de atenderla económicamente dando a la separación un aspecto más patente de abandono legal y la crisis provocó la presentación de la demanda en este caso.

"Desde cualquier punto que se mire esta situación, aún en el supuesto de que el demandado todavía guarde algún cariño a la esposa, con cuya unión se ha visto halagado por la juventud, entendemos que es preferible la declaración del divorcio, pues se demuestra por los hechos ocurridos, que no hay entre ellos el lazo de unión pacífica y feliz que es necesario para la vida conyugal y para el buen ejemplo de los hijos."

Es aparente que, no obstante lo bondadoso y laudable de sus motivos, el juez de distrito estaba tratando de desempeñar el papel de un Salomón en vez de ceñirse a la ley y a la jurisprudencia. No está dentro de las atribuciones de las cortes el establecer la regla de que esposas jóvenes puedan divorciarse impunemente de esposos ya maduros.

En verdad, hay autoridades de prestigio que nos llevarían al convencimiento de que quizás, aún enfocando el problema como una cuestión de política social, la corte inferior pudo haber estado equivocada. Los franceses, que no dejan de ser sabios en estos asuntos, sostienen que la edad de la esposa debe ser la mitad de la del esposo más siete años. Toda vez que el esposo en este caso en la época del juicio tenía 57 y su esposa 35, tal parece que el presente sería un matrimonio perfecto bajo tal fórmula. Sea ello como fuere, no hubo prueba clara y convincente de que el esposo abandonó a su esposa, y ésa era la única cuestión que legítimamente podía investigar la corte de distrito.

De igual modo, no nos ayuda la gráfica frase del juez de distrito de que "se casaron en New York, ciudad donde la vida dinámica es causa de que no se medite mucho sobre las consecuencias de estos enlaces inadecuados." Presumiblemente, la corte de distrito estaba tomando conocimiento judicial de tal estado de cosas en Nueva York. Pero seguramente esto no puede tener relación alguna con el hecho de que, después de vivir juntos en Puerto Rico durante cinco años y haber tenido dos hijos, el demandado haya abandonado a la demandante en Puerto Rico. Y no obstante lo dinámica que sea la vida en Nueva York, allí el divorcio no se considera levemente. Sus leyes disponen solamente una causal de divorcio—adulterio (sección 1147, Ley de Práctica Civil de Nueva York). [4] Aparentemente, el juez de distrito estaba convencido de que las partes eran incompatibles, y creyó que ellas, su familia y la sociedad estarían mejor servidas concediendo el divorcio. Hasta que la Legislatura disponga que puede concederse el divorcio por incompatibilidad, no podrá sostenerse sentencia alguna basada en tales fundamentos. Véase *Delgado* v. *Mercado,* ante, pág. 585, resuelto en junio 18, 1942.

*La sentencia de la corte de distrito será revocada.*

Los Jueces Asociados Señores Travieso y De Jesús no intervinieron.